IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARKS & SOKOLOV, LLC

v.                                    C.A. NO. 13-3152

SHAHROKH MIRESKANDARI and
PAUL BAXENDALE-WALKER

FILED

MAR 1 1 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM OPINION

SCHMEHL, J.                              MARCH //, 2015

Defendants have filed a motion to set aside a default judgment entered against them,

claiming the judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure or is

the product of excusable neglect under Rule 60(b)(1). The Court has heard oral argument on the

motion. Following the oral argument, the case was referred to United States Magistrate Judge

Richard A. Lloret for a mediation, which proved unsuccessful. For the reasons that follow, the

motion is granted in part and denied in part.

The plaintiff law firm brought this breach of contract action on June 7, 2013, seeking

$243,616.29 in unpaid legal fees from the defendants for plaintiff's representation of the

defendants in the matter of Mireskandari, et al. v. Mayne, et al., No. 2:13-cv-04796, in the United

States District Court for the Central District of California (the "Mayne matter"). Neither

defendant filed an Answer or Entry of Appearance in response to the Complaint within the

applicable time limits.

Instead, on August 6, 2013, defendants filed a *pro se* Petition for Arbitration (the "California Petition") with the Los Angeles County Bar Association Attorney-Client Mediation and Arbitration Services against the plaintiff. (Declaration of Thomas C. Sullivan, Esq. "Sullivan Dec.," ECF 12-2, ¶ 18, Ex 12.) The California Petition was signed by both defendants. Attached to the California Petition was a copy of the Complaint filed by plaintiff in this matter. (Sullivan Dec., ECF 12-2, ¶¶ 19, 20, Ex. 12.) By letter dated August 7, 2013, the case coordinator for the Attorney-Client Mediation and Arbitration Services informed plaintiff that any outstanding court action concerning a fee dispute between plaintiff and defendants was automatically stayed pending the outcome of the California Petition. (ECF 8).

On December 12, 2013, just one week before a hearing on the California Petition was to take place, defendants, through California counsel, William K. Mills, Esq., withdrew the California Petition. (Sullivan Dec., ECF 12-2, ¶ 22, Ex. 13; ECF 9.) On December 23, 2013, defendants filed an action in the Superior Court of California (the "California State Court Action"), claiming legal malpractice and breach of fiduciary duty against plaintiff arising out of plaintiff's original representation of defendants in the Mayne matter. Plaintiff immediately moved to dismiss the California State Court Action on the grounds that it violated a forum selection clause contained in the original letter of engagement between plaintiff and defendants and for reasons of comity. (Sullivan Dec., ECF 12-2, ¶ 26, Ex. 20.)

On January 24, 2014, after the automatic stay in the California Petition had expired, plaintiff filed a praecipe for entry of default against the defendants. (ECF 10.) On February 4, 2014, plaintiff filed a praecipe to issue alias summons. (ECF 11.) On February 27, 2014, plaintiff

2

filed a motion "for service to determine service has been effected and permit service by alternate means to remove any doubt as to service." (ECF 12.) By Order of March 4, 2014, the Court granted the motion. (ECF 13.)

On March 5, 2014, plaintiff filed another praecipe for default and the Clerk entered a default against defendants on that same day. (ECF 14.) On April 1, 2014, plaintiff filed another praecipe to enter default on the basis that alternate service had been completed. (ECF 16.)

On April 8, 2014, plaintiff filed a motion to "deem alternate service complete; enter default based on alternate service; and enter default judgment." (ECF 17.) The motion sought sum certain damages as follows: 1) $210,930.43 in unpaid legal fees and expenses; 2) $10,546.52 in interest; and 3) $8,216.30 in attorney fees and expenses in having to defend the California State Court Action. (ECF 17-2.) By Order entered on April 10, 2014, the Court ordered that alternate service is deemed complete and effective against the defendants, as made in accordance with the Court's March 3, 2014 Order and entered default judgment against the defendants in the requested amount of $229,693.25. (ECF 18.)

Defendants first argue that the judgment is void and must be vacated under Rule 60(b)(4) because it was entered in violation of Fed. R. Civ. P. 54(c) in that it differed in kind from the amount sought in the Complaint. Rule 54(c) provides that a default judgment may not be "different in kind or exceed in amount that prayed for in the demand for judgment." "[T]he relief available on default [should] be such as within the fair scope of the allegations of the complaint, and when money judgment is sought, the specific amount demanded." Compton v. Alton Steamship Co., 608 F.2d 96, 104 n.16 (internal citations omitted). See also Slige v. Merz, 510 F.3d 157, 159, 160 (2d Cir. 2007)(holding that the district court did not err by entering a default

3

judgment "only for the amount sought in the complaint" and refusing to include an award for

prejudgment interest, where the plaintiff's complaint did not specifically request prejudgment

interest.)

    Defendants contend that the entire default judgment should be vacated because it

contains the amount of $8,216.30 for the attorney's fees and costs allegedly incurred by the

plaintiff in defending the California State Court Action, an amount which was not sought by

plaintiff when it filed its Complaint in this action. Therefore, even though the total amount

sought by plaintiff in its motion for default judgment ($229,693.25) is actually less that the

amount sought in the Complaint ($243,616.20), these attorney's fees and costs should not be

recoverable since the fees were not part of the prayer for judgment in the Complaint. Rather than

void the entire judgment,  however, the Court will simply modify the judgment to eliminate the

sum of $8,216.30. Compton, 608 F.2d at 107.

    Defendants next argue that the judgment is void and must be vacated under Fed. R. Civ.

P. 60(b)(4) because the plaintiff cannot establish that proper service was made on either

defendant and, as a result, the Court lacks personal jurisdiction over the defendants.

    Indeed, a "'default judgment entered when there has been no proper service of the

complaint is, *a fortiori*, void, and should be set aside.'" United States v. One Toshiba Color

Television, 213 F.3d 147, 156 (3d Cir. 2000) quoting Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,

756 F.2d 14, 19 (3d Cir. 1985).  "[T]he party asserting the validity of service bears the burden of

proof on that issue." Grant Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

488 (3d Cir. 1993).

    With respect to defendant Paul Baxendale-Walker ("PBW"), Sullivan declares, under

penalty of perjury, that PBW's last known address is his business address at Baxendale-Walker, Ltd., Warwick House, Fourth Floor, 25-27 Buckingham Palace Road, London, England (the "London address"). (Sullivan Dec., ECF 12-2, ¶ 3, Exs. 1, 16.) On June 14, 2013, the Clerk sent a copy of the summons and complaint to PBW at the London address via registered mail, return receipt requested. (Sullivan Dec., ECF 12-2, ¶ 4; ECF 4.) The service package was marked "delivered" on June 19, 2013, signed by "LUCY ANNE" (ECF 17-3, Ex. B.) However, the Clerk never received a return receipt from either the United States or British postal authorities for the registered mail. (Sullivan Dec., ECF 12-2, ¶ 6.)

Pursuant to this Court's March 4, 2014 Order permitting alternate service, the summons and complaint were sent to PBW by regular air mail to the London address as well as by regular mail to a California address, 9903 Santa Monica Boulevard, Suite 406 Beverly Hills, CA 90212, by regular mail to another California address, 433 N. Camden Drive, Sixth Floor, Beverly Hills, CA 90210, by e-mail to litemill@yahoo.co.uk and by certified mail to defendants' California counsel, William K. Mills, Esq. (ECF 15.)

With respect to defendant Shahrokh Mireskandari ("SM"), Sullivan declares, under penalty of perjury, that as of July 2, 2013, SM's last known business address was 9903 Santa Monica Blvd., Suite 406, Los Angeles, CA. 90212 (the "Santa Monica address") (Sullivan Dec., ECF 12-2, ¶ 7.) On July 8, 2013, Sullivan certified that, in accordance with Fed. R. Civ .P. 4(e)(2) and Pa. R. Civ. P. 403 and 404, he sent a service package via certified mail, Article No. 7011 1570 0001 1287 8524 to the Sant Monica address. (Sullivan Dec. ¶¶ 7, 8, ECF 12-2. Ex. 5.) According to plaintiff, the certified mail receipt was signed by SM's agent, "BH Mailbox". (Sullivan Dec. ECF 12-2 ¶ 9; ECF 5.)

5

Pursuant to this Court's March 4, 2014 Order permitting alternate service, the summons and complaint were sent by regular mail to SM at the Santa Monica address as well as to another California address, 433 N. Camden Drive, Sixth Floor, Beverly Hills, CA 90210 (the "Beverly Hills address"), by e-mail to sm.law@hotmail.co.uk  and by certified mail to defendants' California counsel, William K. Mills, Esq.  (ECF 15.)

The record further reflects that on July 11, 2013, Attorney Mills sent the following email to Sullivan:

> This office has been retained to represent Messrs. Baxendale-Walker and Mireskandari (collectively, the "Clients") in connection with their disputes with Bruce Marks and your law firm. In the future, all communications concerning the Clients or their matters should be directed to me and my partner David B. Parker. We understand that an action has been initiated against the Clients by your law firm in Pennsylvania regarding the issue of outstanding fees (the "PA Litigation").

(Sullivan Dec., ECF 12-2, ¶ 11, Ex 6.)

Mills stated "neither Mr. Baxendale-Walker nor Mr. Mireskandari have yet been effectively served" and instructed future communications be directed to himself and requested a copy of the Complaint, copying Defendants. (Sullivan Dec., ECF 12-2, ¶ 12, Ex. 7.) On July 16, 2013, Sullivan emailed Mills the Summons and Complaint. (Sullivan Dec., ECF 12-2, ¶ 13, Ex. 8.) On July 19, 2013, Mills requested the "Pennsylvania case shall be dismised without prejudice and the parties shall forbear from initiating any litigation or Mandatory Fee Arbitrations." On July 26, 2013, Sullivan advised Mills: "We will not dismiss the Pennsylvania case and instead will proceed with the litigation." (Sullivan Dec., ECF 12-2, ¶ 14, Ex. 9.) Sullivan also requested that defendants agree to accept service. (Sullivan Dec., ECF 12-2, ¶¶ 15-16, Exs. 10-11.)

On September 18, 2013, defendants were ordered by the Court in the Mayne matter to

"file a notice containing usable telephone numbers, fax numbers, addresses and email addresses

for [SM and PBW] within three court days of [September 18, 2013]." (Sullivan Dec., ECF 12-2,

¶ 29, Ex. 15.) Defendants failed to comply. As a result, on October 15, 2013, defendants were

ordered to show cause why their action should not be dismissed for failure to comply with the

Court's September 18, 2013 Order . . . and to "file a notice with the Court containing current,

usable, contact information for [SM and PBW], including an office or residence address and, if

available, usable telephone numbers, fax numbers and email addresses. . . by October 21, 2013."

(Sullivan Dec., ECF 12-2,¶ 30, Ex. 17.)

On October 22, 2013, defendants stated in their response to the show cause order that:

> The [Santa Monica Address] used on the earlier pleadings is one where the
> plaintiffs have previously and reliably received mail, and had received mail
> connected to this matter. The new address is the office of Mr. Mireskandari, and
> serves as the Los Angeles office for Mr. Baxendale Walker, whose principal
> residence is in London. Mr. Baxendale Walker receives mail at the above-styled
> address. Because of the difficulty and expense of using a London address, Mr.
> Baxendale Walker agrees that case related materials may be mailed or delivered to
> the [Wilshire Address], and he will receive them promptly.

(Sullivan Dec. ECF 12-2, Ex.18.) (emphasis added).

On October 22, 2013, SM filed a Declaration in the Mayne matter, under penalty of

perjury, stating:

> Both Mr. Baxendale Walker and I are filing Notices of Change of Address along
> with the response to the [Order to Show Cause]. The mailing address for both Mr.
> Baxendale and myself in Los Angeles will be my office, which is located at 433
> N. Camden Drive, Sixth Floor, Beverly Hills, California 90210. Both mail and
> deliveries can be received at this address. . . . . The address that initially appeared
> on the pleadings in this matter in the past has been a reliable location for me to
> receive mail delivery for some time, and I in fact have continued to receive mail at

that location.[1]

(Sullivan Dec., ECF 12-2, Ex. 19)(emphasis added).

Defendants were also not truthful with the Mayne court concerning the Beverly Hills

address. On February 4, 2014, after the stay caused by the California Petition expired, plaintiff

filed a Praecipe to Issue an Alias Summons (ECF 11). On February 12, 2014, plaintiff's process

server attempted personal service on defendants at 433 N. Camden Drive, Sixth Floor, Beverly

Hills, Ca 90210. The process server reported that defendants are not listed as tenants at this

address and that the receptionist who was working at that address informed the process server

that she is not familiar with either SM or PBW and has not received any mail on their behalf at

that address. (Sullivan Dec., ECF 12-2, ¶¶ 33-36.)

Defendants argue that PBW was not properly served on June 14, 2013 in accordance with

Fed. R. Civ. P. 4(f)(2)(c)(ii)[2] because 1) the summons and complaint were signed for by PBW's

---

[1]As it turned out, SM was not being truthful with the Mayne court concerning the Santa
Monica Address. On June 28, 2014, Gloria Rivas, the manager of Beverly Hills Mailbox,
declared that SM and PBW "have never applied for a mailbox, used a mailbox in their own
names, or been customers of Beverly Hills Mailbox" and Mailbox #406 has been unused since
2009. (ECF 28-1.) In response to document requests by plaintiff, SM produced no contract,
agreement, or evidence of payment for Mailbox #406. Rather, SM produced pictures of purported
mailbox keys and a Beverly Hills Mailbox price sheet purportedly for Mailbox #406. (Def. Doc.
Prod. Ex. D, Bates No. 43-46, 48.) On July 17, 2014, SM and his California attorney appeared at
Beverly Hills Mailbox with a key, but SM was unable to open Mailbox #406 or even the front
door to Beverly Hills Mailbox. (ECF 31-5.)

[2]Rule 4(f) of the Federal Rules of Civil Procedure provides:
        (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal
law provides otherwise, an individual. . . may be served at a place not within any judicial district
of the United States:
        (1) by any internationally agreed means of service that is reasonably calculated to
        give notice, such as those authorized by the Hague Convention on the Service
        Abroad of Judicial and Extrajudicial Documents;

agent "LUCY ANNE"[3] and not by PBW himself and 2) plaintiff never produced any signed

return receipt. The Court agrees that Fed. R. Civ. P. 4(f)(2)(c)(ii) does require service upon the

defendant himself rather than on his agent, see O'Donnell v. Shalayev, 2004 WL 2958698

(D.N.J. Dec. 22, 2004), and that plaintiff has not produced a signed return receipt.[4] However,

plaintiff also made alternate service on PBW pursuant to Rule 4(f)(3) by regular air mail to the

London address and by regular mail to PBW at the Santa Monica address and the Beverly Hills

---

(2) if there is no internationally agreed means, or if an international agreement
allows but does not specify other means, by a method that is reasonably calculated
to give notice:
> (A) as prescribed by the foreign country's law for service in that
> country in an action in its courts of general jurisdiction;
> (B) as the foreign authority directs in response to a letter rogatory
> or letter of request; or
> (C) unless prohibited by the foreign country's law, by:
>> (i) delivering a copy of the summons and of the
>> complaint to the individual personally; or
>> (ii) using any form of mail that the clerk addresses
>> and sends to the individual and that requires a
>> signed receipt; or
(3) by other means not prohibited by international agreement, as the court orders.

[3] In a verified motion dated May 8, 2014, PBW stated that he "does not know anyone named LUCY ANNE." (ECF 19 at p.12.) In response Bruce S. Marks, Esq. filed a Declaration ("Marks Declaration") on May 22, 2014, stating that PBW's denial was false, attaching an email from PBW to SM and a Lucy Anne Wartnaby dated February 1, 2013. (ECF 20-4.) On June 3, 2014, PBW filed a Corrected Verified Statement stating "[I] recall I knew a woman named Lucy-Anne Wartnaby." (ECF 21-1, p.5). In a supplement, plaintiff attached 10 other e-mails from November 2012 through February 2013 produced in discovery which reveal that PBW knew "Lucy Anne" all along. (ECF 31-2.) Lucy Anne's November 6, 2012 email identifies herself as a Baxendale-Walker company representative and "PA to Chairman and Client Liaison Executive." According to plaintiff, "PA" means personal assistant and the "Chairman" is PBW. (ECF 31.)

[4] After service has been accomplished, Fed. R. Civ. P. 4(l) requires that a plaintiff file proof of service. Rule 4(l)(2)(B) indicates that service not within any judicial district of the United States must be proved, "if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." (Emphasis added).

9

address as well as by e-mail to litemill@yahoo.co.uk and by certified mail to defendants'

California counsel, William K. Mills, Esq. (ECF 15). PBW does not contend that he was not

properly served under any of these alternate methods and the Court is satisfied that that the

summons and complaint were delivered to PBW.

"Applying Rule 4(f)(3), courts have authorized several alternative methods of service,

including service by publication, ordinary mail, mail to the defendant's last known address,

delivery to defendant's attorney, delivery to the defendant's United States subsidiary, telex, and,

increasingly, e-mail." Ist Tech., LLC v. Digital Gaming Solutions, 2008 U.S. Dist. LEXIS 88341,

*20 (E.D.Mo. 2008) citing Rio Properties v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir.

2002). The alternate service must comply with constitutional notions of due process. To comply

with due process, the method of service "must be reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections." Mullane v. Cent. Hanover Bank and Trust Co., 339 U.S.

306, 314 (1950).

The Court finds that, in light of the overall record in this case, the plaintiff's alternative

method of service on PBW complied with constitutional notions of due process and afforded him

an opportunity to present any objections. Indeed, the record reflects that service was made to the

two California addresses provided by defendants under penalty of perjury in a court filing.

Service was also made upon defendants' counsel. Moreover, PBW had notice of this action at

least as early as August 6, 2013 as evidence that by the fact that he attached a copy of the

Complaint in this matter to the California Petition.

SM contests the July 8, 2013 certified mail service to his agent at the Santa Monica

10

Address on two grounds: (a) the person who signed for the mail, "BH Mailbox" was not SM's agent, and (b) he did not receive the mail, the Santa Monica address was not his place of business, and because he did not know the identity of the person who signed the receipt, he could not determine if that person was his agent.

Plaintiff served SM under Fed. R. Civ. P. 4(e)(2)[5] by sending a copy of the summons and complaint to SM at the Santa Monica Address. The Court rejects both of these grounds as SM already confirmed in a court filing on October 22, 2013 in the <u>Mayne</u> matter that the Santa Monica address "is one where the plaintiffs have previously and reliably received mail." (Sullivan Dec. ECF 12-2, Ex. 18.) SM further declared that "[t]he Santa Monica address that initially appeared on the pleadings in this matter has in the past been a reliable location for me to receive mail delivery for some time, and I in fact have continued to receive mail at that location." (Sullivan Dec. ¶¶ 31-32 Ex. 18 and 19.) Having made such a declaration in a court filing under penalty of perjury, SM cannot now claim that the Santa Monica Address is invalid or that the person who signed was not his agent.

In addition, SM ignores the fact that he, like PBW, was also served by alternate means, including by regular mail to SM at the Santa Monica address, the Beverly Hills Address as well as by e-mail to sm.law@hotmail.co.uk and by certified mail to Defendants' California counsel, William K. Mills (Doc. 15). SM, like PBW, does not contend that he was not properly served

---

[5]Fed.R.Civ.P. 4(e)(2) permits "[s]erving an Individual Within a Judicial District of the United States. . .by doing any of the following: (A) delivering a copy of the summons and complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

under any of these alternate methods.

The Court finds that the plaintiff's alternative method of service on SM also complied with constitutional notions of due process and afforded him an opportunity to present any objections. Indeed, the record reflects that service was made to the two California addresses provided by defendants under penalty of perjury in a court filing. Service was also made upon defendants' counsel. Moreover, SM had notice of this action at least as early as August 6, 2013 as evidence that by the fact that he attached a copy of the Complaint in this matter to the California Petition.

In sum, defendants' argument that the judgment is void under Fed. R. Civ. P. 64(b)(4) because of improper service clearly has no merit.

Defendants also argue that the default judgment should be vacated under Rule 60(b)(1) because it was the result of excusable neglect on their part. Rule 60(b)(1) states that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise or excusable neglect."

In deciding a motion to vacate a default judgment based on excusable neglect, our Court of Appeals has stated that a district court must consider the following factors: (1) whether the plaintiff will be prejudiced if the judgment is vacated; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the result of the defendant's culpable conduct. See United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). These standards apply regardless of whether the motion to vacate is brought under Federal Civil Procedure Rule 55(c) or Rule 60(b). Id.

Our Court of Appeals has determined that the second factor, whether the defendant has a

meritorious defense, is the threshold question. Id. A meritorious defense "is the critical issue because without a meritorious defense [defendant] could not win at trial . . .[and] there would be no point in setting aside the default judgment. .. .if [defendant] could not demonstrate the possibility of his winning." Id. In order to show that a meritorious defense exists, a defendant must allege specific facts that, if established at trial would constitute a complete defense. Id. A meritorious defense cannot be shown by "conclusionary language" or "verbatim excerption[s] of the statutory language." Id. at 196.

Defendants have not even attached a proposed Answer to their motion to set aside the default judgment.  In their motion to set aside the default judgment, defendants admit that they entered into a valid fee agreement with plaintiff. (ECF 21-1.) Indeed, plaintiffs have already paid over $500,000 in legal fees to the plaintiff. Instead, they essentially argue that plaintiff's bills for the remaining balance are excessive and/or unreasonable. Specifically, they contend that PBW was improperly billed, that plaintiff charged an improper rate for a junior attorney and that plaintiff failed to credit two payments made by defendants. Plaintiff relies on the Marks Declaration, which defendants have not refuted, in which Marks disputes each of the defendants' claims. (ECF 20-2.) After reviewing the unrefuted declaration, the Court is convinced that defendants do not have a meritorious defense and, that by claiming they do, defendants are just attempting to evade their contractual obligations to the plaintiff in the same manner they tried to evade service.

Although the issue of a meritorious defense is determinative, the Court will nevertheless analyze the issue of excusable neglect with respect to the first and third factors stated in $55,518.05 in U.S. Currency. These two factors are similar to the excusable neglect requirement

13

developed by the United States Supreme Court in Pioneer Investment Services Company v.

Brunswick Associates Limited Partnership, et al., 507 U.S. 380 (1993). In Pioneer, the Supreme

Court concluded that the determination of whether excusable neglect existed was an equitable

decision to be made after "taking account of all relevant circumstances surrounding the party's

omission." Pioneer, 507 U.S. at 395. In determining the existence of excusable neglect, courts

must consider: (1) whether there is a danger of prejudice to the non-movant; (2) the length of the

delay and its potential impact on judicial proceedings; (3) the reason for the delay, including

whether it was within the reasonable control of the movant; and (4) whether the movant acted in

good faith. Id.

   The first factor the court must consider is whether there will be any prejudice to plaintiff

if the court grant's the defendant's motion to set aside entry of default. Ewing & Kreiser, P.C. v.

Stephens, 2009 WL 1183347, at *3 (E.D. Pa. May 1, 2009). A plaintiff may be prejudiced by

setting aside the entry of default when the plaintiff's claims "would be materially impaired

because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance

on the entry of default, or other substantial factors. Id. (quoting Blue Ribbon Commodity

Traders, Inc. v. Progresso Cash & Carry, 2008 WL 2909360, at *3 (E.D. Pa. July 23, 2008))

(internal quotation marks omitted).

   This case does not present the situation where setting aside the default judgment will

impinge upon plaintiff's ability to pursue the litigation in the sense that evidence will be lost, but

rather setting aside the judgment may result in an increased potential for fraud. In Ewing, the

court determined that the defendants were using their "non-meritorious legal positions to delay

their contractual obligations [to the plaintiffs] and they [were] inferentially doing so to avoid

14

paying Plaintiff the fees that are due." <u>Ewing</u>, 2009 WL 1183347, at *3. Based on this finding, the court held that the plaintiff would be prejudiced by lifting the default. <u>Id</u>.

The same reasoning clearly applies here. Defendants have not identified any meritorious defenses to plaintiff's claims. The potential for a delay in plaintiff's recovery of money owed to plaintiff by defendants gives rise to "the increased potential for fraud or collusion," <u>see</u>, <u>Ewing</u> 2209 WL 1183347, at *1 and weighs in favor of denying the motion to set aside the default judgment.

With respect to the second factor, the Court notes that defendant took no action to defend this case until nearly one year after the Complaint had been filed. (Complaint file June 7, 2013; motion to set aside default judgment filed May 8, 2014.)

With respect to the third and fourth factors, the Court finds that the default was solely the fault of the defendants' culpable conduct and that the defendants acted in bad faith.

As stated by plaintiff in its opposition to defendants' motion to open the default judgment, plaintiff "served defendants every which way to Sunday." (ECF 20, p.1.) Defendants willfully attempted to evade service in this action by providing what turned out to be false addresses to a federal district court (<u>Mayne</u>) and, in the case of PBW, even initially denying knowing the name of his own assistant. Indeed, it was not until a default judgment was entered against them that defendants took any action to defend this case. Even then, the defendants did not bother to attach a proposed Answer to their motion to set aside the default judgment.

The Court finds that based on the record in this case, the default judgment resulted from a carefully orchestrated plan by the defendants to delay this action so that they could proceed with what they no doubt hoped would be considered the first-filed California State Court Action

15

against plaintiff. The Court concludes that the defendants filed the California Petition merely to stay this action as evidenced by defendants' withdrawal of the California Petition just one week before it was set to be heard. Moreover, just 11 days after they withdrew the California Petition, defendants filed the California State Court Action against the plaintiff. Defendants no doubt hoped to secure a favorable decision in the California State Court Action, before any judgment could be entered against them in this action. Unfortunately for defendants, their tactics did not pay off, and this Court entered a default judgment against them. By deliberately choosing to ignore filing a response in this action so they could proceed with the California State Court Action, defendants invited a default judgment in this action. Having deliberately and intentionally taken these actions, defendants are in no position to claim that the default judgment was entered against them because of excusable neglect.

For all the foregoing reasons, the defendants' motion to set aside the default judgment is denied.

16