IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARKS & SOKOLOV, LLC

            V.            C.A. NO. 13-3152

SHAHROKH MIRESKANDERI,
PAUL BAXENDALE-WALKER

### MEMORANDUM OPINION

SCHMEHL, J.                            OCTOBER 6, 2016

      By Memorandum Opinion and Order entered on March 11, 2015, this Court denied the defendants' motion to set aside a default judgment entered against them in the amount of $229,693.25. (ECF 52, 53.) In that Opinion, the Court detailed the extent the defendants went to willfully evade service of process in this action by, <u>inter alia</u>, providing what turned out to be false addresses to a federal district court in California and, in the case of defendant Paul Baxendale-Walker ("PBW"), even initially denying knowing the name of his own assistant. (ECF 53, pp. 8-9, fn. 3.) The Opinion also documents PBW's blatant attempts at forum shopping. Defendants subsequently filed a timely appeal, which is pending. (ECF 54.)

      In another order entered on March 11, 2015, the Court granted plaintiff's motion to compel discovery responses and ordered defendants to "provide full, complete and verified responses to Plaintiff's Interrogatories and Request for Production of Documents in Aid of Execution within seven (7) days or suffer sanctions..." (ECF 50.)

      On March 18, 2015, defendants filed a motion to stay the Court's March 11, 2015 Order directing defendants to respond to discovery in aid of execution (ECF 50) pending appeal and

requested permission to post bond to secure the judgment. (ECF 56.) By Order dated April 2, 2015, the Court conditionally granted the motion to stay provided defendants post a supersedeas bond from a recognized Pennsylvania surety in the amount of $223,00.00 within seven (7) days of the entry of the Order. (ECF 59.) In the same Order, the Court stated that in the event defendants failed to post the supersedeas bond within seven days, the stay would be vacated. (ECF 59.) When defendants failed to post the supersedeas bond within seven days, the Court vacated its April 2, 2015 Order and ordered that the defendants' motion to stay the Court's March 11, 2015 Order (ECF 50) directing defendants to complete discovery in aid of execution was denied. (ECF 61.) Since that time, defendant Shahrokh Mireskandari ("SM") has apparently complied with plaintiff's discovery requests in aid of execution, but PBW has refused to do so.

On May 8, 2015, PBW, for the first time, claimed that he "was suffering from serious medical conditions which not only impaired his ability to communicate with counsel but prevented him from doing so." (ECF 68-3, p. 3.) PBW also claimed he suffers from "a host of psychological and physiological maladies, impairing his ability to participate in court related proceedings, including without limitation, responding to discovery." (Id., p. 6.)

On May 13, 2015, plaintiff served its Second Request for Production of Documents in Aid of Execution for documents related to PBW's alleged inability to communicate with counsel as well as for credit card and telephone records from after January 1, 2015 and medical records relating to PBW's alleged condition. After PBW failed to respond, plaintiff filed a motion to compel. (ECF 81.)

Plaintiff also filed a "Rule 37 Motion to hold defendant Paul Baxendale-Walker ("PBW") in contempt of and imposition of mandatory sanctions." (ECF 62.) On June 29, 2015, the Court

2

held oral argument on the motion. PBW's counsel argued that PBW should not be held in civil contempt because it was physically impossible for him to have obeyed the March 11, 2015 Order. Physical impossibility is a valid defense against a finding of civil contempt. *See Harris v. City of Phila.*, 47 F.3d 1311, 1324 (3d Cir. 1995).

In a Memorandum Opinion and Order filed on July 29, 2015, the Court granted the motion for contempt, finding PBW to be in contempt of the Court's March 11, 2015 Order directing PBW to provide discovery in aid of execution. (ECF 87.) The Court also ordered PBW to pay attorney's fees and costs to plaintiff in the amount of $10,000 within 10 days and directed PBW to provide full, complete and verified responses to plaintiff's discovery requests in aid of execution within 10 days. Id. The Court also ordered that in the event PBW did not comply he would be fined $250 per day until he fully complied. Id.

Instead of attempting to purge the contempt, PBW filed a motion to reconsider and/or vacate the Court's July 29, 2015 contempt Order which is presently pending before the Court. (ECF 90.) In that motion, PBW again asserts that he is "unable to participate in the discovery process due to serious health issues", "incapable of effectively communicating or having effective communications with counsel" and "physically not fit to take part [in] any court-related proceeding."(Id., p. 5.) PBW also argued that there is "no evidence to suggest that [PBW] is capable of providing direction to counsel sufficient to answer the extensive outstanding discovery served by Plaintiff in this case."(Id., p. 11.)

The purpose of a motion for reconsideration of an order is to correct manifest errors of law or fact, or to present newly discovered evidence. *Max's Seafood Café v. Max Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening

change in controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Id.* "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Cont. Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Moreover, a motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through-rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993). "The motion for reconsideration should not be used as a vehicle for endless debate between the parties and the court." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991).

To support his defense of physical impossibility, PBW provided a letter dated April 23, 2015, from a Michael Farzam, MD whose title is listed on the letter as "House Call Doctor Los Angeles." (ECF 68-2.) In the letter, Dr. Farzam states that he is a physician licensed to practice medicine as a general practitioner and that PBW has been under his medical care since January, 2010. He further states that he "conducted a full physical examination of [PBW] on January 19 and 20, 2015 (having flown urgently from Los Angeles to London to do so)." (ECF 68-2.) Dr. Farzam opines that PBW suffers from, *inter alia*, the following maladies:

> a) severe gastrointestinal symptoms of chronic abdominal cramps, bloating, diarrhea and irritable bowel syndrome makes him incapable of participating in court related activity.
>
> b) peripheral neuropathy fibromyalgia resulting in chronic pain do not allow him to effectively communicate with counsel.
>
> c) diagnosis of generalized anxiety disorder, depression and post-traumatic stress disorder have led to significant cognitive limitations, causing lack of focus and attention to even the most basic tasks of living.

(ECF 68-2.) The letter is silent as to when PBW began to first suffer from these alleged maladies.

At the oral argument, PBW's counsel also handed up a 42-page "psychodiagnostic evaluation" from Erisa M. Preston, Psy.D. dated June 9, 2015, which apparently was written following a two-day video-taped evaluation of PBW in California. Dr. Preston opines that PBW suffers from "Dementia, Not Otherwise Specified, Generalized Anxiety Disorder and Major Depressive Disorder, Recurrent, Moderate." (Preston Evaluation, p. 40.) Dr. Preston opined that it would be "completely intolerable" for PBW to sit in a courtroom for an extended length of time. (Id. at p. 39.)[1] Dr. Preston further opined that "[a]t most, it appears [PBW] can sit and concentrate for up to 40 minutes, though his level of productive attention and focus diminishes greatly after approximately 20 minutes." (Id.).[2]

On July 6, 2015, PBW submitted a copy of a letter from neurologist Hart C.M. Cohen, M.D., F.R.C.P. to Dr. Farzam in which Dr. Cohen reported the results of an examination he conducted of PBW on June 23, 2015. (ECF 79-1.) Dr. Cohen reports that PBW suffers from "moderate dementia" with a prognosis of further decline. (Id. at p. 1.) Dr. Cohen opined that "[PBW's] neurocognitive deficits and physical/neurologic deficits preclude the patient from participating in the preparation of legal proceedings, or attending at legal proceedings in court, or giving evidence in court, particularly, when such relates to matters of long-term memory, in which the patient has a severe deficit." (Id. at p. 2.)

---

[1] This point is irrelevant because PBW is not being requested to sit in a courtroom for "an extended length of time." All he is required to do is comply with discovery requests.

[2] That should be enough time for PBW to comply with the discovery requests in this matter.

In its July 29, 2015 Opinion, the Court summarily rejected the contents of the three submissions, finding them to be irrelevant because none of the submissions actually stated that PBW was unable to answer interrogatories or requests for production of documents. (ECF 86, p. 7.) The Court also rejected the reports, finding them to be inadmissible because none of the submissions: 1) were sworn to or made under penalty of perjury under 28 U.S.C. § 1746; 2) stated that they were made 'within a reasonable degree of medical certainty'; (3) qualified as expert reports under Rule 26 of the Federal Rules of Civil Procedure; and (4) satisfied the reliability requirements of Rule 702 of the Federal Rules of Evidence in that they do not contain any corroborating diagnostics. (Id. at 7-8.)

In his motion for reconsideration, PBW's counsel claims that after the Court issued its Contempt and Sanctions Order on July 29, 2015, PBW has been examined by Dr. Tim Green who PBW's counsel describes as "an independent doctor retained by the Crown Prosecution Service and Serious Fraud Office, in a case pending in England." (ECF 90, p. 8.) Plaintiff's counsel claims that a "transcript" of the recorded examination reveals that the doctor noted that PBW struggled to speak with him for even a short time, the doctor recognized "'white matter damage'" in PBW's brain, and also recognized that PBW has "'a number of physical/mental damage problems.'" Id. Counsel stated that "[t]he written report presumably will confirm these statements made by the doctor during the examination." (Id. at 9.)

PBW's counsel did not attach a copy of the "transcript" to his motion for reconsideration. To date, counsel has not submitted any "written report" from Dr. Green. Accordingly, counsel's "new evidence" is rejected.

PBW's counsel next contends that "[t]he Court weighed the evidence improperly and new evidence confirms as much." Specifically, counsel argues that the Court "disbelieved the reports of three reputable doctors without any medical evidence to the contrary." Id.

The Court, however, never got as far as weighing the three doctors' submissions. Rather, the Court summarily rejected the reports as irrelevant because none of the submissions actually stated that PBW was unable to answer interrogatories or requests for production of documents. (ECF 86, p. 7.) In addition, the Court found the submissions were inadmissible because none of the submissions: 1) were sworn to or made under penalty of perjury under 28 U.S.C. § 1746; 2) stated that they were made 'within a reasonable degree of medical certainty'; (3) qualified as expert reports under Rule 26 of the Federal Rules of Civil Procedure; and (4) satisfied the reliability requirements of Rule 702 of the Federal Rules of Evidence in that they do not contain any corroborating diagnostics. (Id. at 7-8.) As noted above, PBW's counsel has failed to submit any new evidence that would corroborate the contents of those three submissions.

PBW's counsel next argues that the Court did not allow him enough time to assert all of his arguments before making a ruling. This is simply not true. The Court was aware that new defense counsel had entered his appearance on June 17, 2015. However, new counsel never moved for a continuance. During the oral argument on June 29, 2015, the Court specifically invited defense counsel to submit any new and additional arguments he wished to make as a result of reviewing the file. It was at the argument that plaintiff handed up to the Court the submission from Dr. Preston. On July 6, 2015, counsel submitted the report of Dr. Cohen. Having not received any further submissions or notification that any further documentation was coming from PBW's counsel, the Court issued its decision on July 29, 2015.

Finally, PBW's counsel argues that in any event, PBW has offered to submit an affidavit averring that he has no assets in the United States available for execution to satisfy a judgment. As a result, counsel argues, that given PBW's alleged medical condition, PBW should not have to comply with the Court's March 11, 2015 Order directing PBW to provide discovery in aid of execution.

Given PBW's actions and conduct in this case, the Court finds that such an affidavit from PBW would simply not satisfy the Court's discovery Order.

Ironically, any "new" evidence discovered after the Court's Order on July 29, 2015 only bolsters the Court's decision. This evidence includes 37 email communications between PBW and his prior counsel between approximately January 1, 2015 and May 1, 2015 with 11 of the 37 actually originating from PBW. (ECF 101-1.) These emails demonstrate that PBW not only has the ability to communicate with counsel, but actually is directing counsel how to proceed. In addition, PBW pled guilty to one count of forgery on April 15, 2016 in proceedings in the Guildford Crown Court and was ordered to pay a £15,000 fine; £15 victim surcharge; and £210,000 as costs for prosecution. See Certificate of Conviction (ECF 159-2), Solicitor's Journal Article, (ECF 159-3). Obviously, PBW could not have pled guilty just a few months ago without being able to communicate with his counsel and having sufficient cognitive ability to understand his plea.

For the foregoing reasons, PBW's motion for reconsideration is denied.